And the next case is PlayNation Play Systems v. Velex Corporation. Mr. Ward is here for Velex. Mr. Hershovitz is here for PlayNation. And once you're all situated at the council table, Mr. Ward, you may begin your argument. Good morning, Your Honors. Good morning. Bob Ward for the Appellant Velex. My client, Mr. Alexandrov, is with us this morning. May I reserve three minutes, please? You may. This case, too, is a good faith case. Specifically, the district court found willful infringement solely on the basis that Velex did not cease using its trademark once suit had been filed. Our position is that Velex had a perfect right to continue using its mark and had a right to defend itself in the case. The plaintiff moved for summary judgment, which was denied. The plaintiff did not move for a preliminary injunction. And, therefore, Velex acted in good faith, particularly in view of the fact that Velex had a federal registration on the accused mark. In the Tiramisu case, did the defendant have a valid mark registered? Which case was that? Tiramisu, the one that the district court relied on. Yes. It did? I believe so. I believe so, Your Honor. But the point here is that this federal registration was in Class 28, just like the asserted registration. The United States government granted this registration to Velex over the registration of the plaintiff, Plaination. But didn't the statute give the district court, though, the authority to cancel that registration if it finds that there's a likelihood of confusion? Yes, later in time. But what I'm focusing on now is whether you have a right to defend once a lawsuit is filed and not what might happen after trial in the case. So what the judge found was it was bad faith to defend yourself. And, of course, we don't have a time machine. We can't forecast, well, the judge might cancel the registration. So as of the trial date, that registration was good. And Velex, therefore, had a right to rely on it in good faith in continuing to use it. The standards for granting a registration, as the court is aware, is the very same standard for determining infringement, namely a likelihood of confusion. The examiner at the USPTO specifically found that there was no likelihood of confusion with any registered mark, and that included the plaintiff's mark. So there was good faith here. The court isn't bound by that, though. And so there was a trial, and the court took into consideration the factors set forth in Lone Star Steakhouse v. Longhorn, the most important of which is whether or not there was actual confusion, and there were two consumers who were actually confused. Okay. My second point there, let me just back up a bit so we don't interpose time frames. Yes, I would agree with the judge if he said, after trial and after I cancel your registration, if you continue after that, then you're not acting in good faith. But at the beginning of the case, the judge hadn't found that. So Velich was acting in good faith. There should not have been a finding of willful infringement, and therefore there should not have been an accounting for profits. Now, to address the point you just raised about— Let me ask one question on the willfulness before you move on. Is there any case that has found willfulness and therefore, in effect, required an accounting for the defendant's profits? Is there any case that relied solely on continuing to use the mark after the suit was filed? No, sir. Of course not. Particularly under the facts here where Velich had a registration. And those cases that say—there are a lot of cases that say the registration is not a shield. But those cases go to the merits. It's not a shield from a finding of infringement. Correct. Do any of those cases involve the willfulness issue? Not of which I'm aware, sir. And moving on to Your Honor's point about supposed actual confusion. What we have here are two ladies who had purchased the plaintiff's product. They weren't confused when they bought an outdoor swing set. And when something was wrong with it, they wound up with the telephone number of Velich, the defendant. Called that number and were immediately advised that, no, we make a pull-up bar. We don't make outdoor swing sets. So they weren't confused. They were careless. Moreover, the case law is very clear that even if this were some kind of confusion, it's not the kind of confusion that the Lanham Act was designed to curtail. The confusion under the Lanham Act, so-called actual confusion, is where there's been a diversion of sales. And there's certainly nothing like that here. The ladies were not confused when they bought the product. They knew the product that they bought. They just had a misdirected communication. I think it's significant to look at two incidents over a period of time of three years. Before you get to the number, which I agree is small, we've got one case going one way and another going the other on two such incidents of actual confusion. But it does seem to me these two, in our case, were consumers that were thinking about buying something to go along with the set, were they not? No, sir. That's not the case. That's not the testimony. One lady was going to restain her outdoor swing set, and she wanted to get the right stain for it. Of course, with my client's pull-up bar, it's used inside. You don't restain it or anything. The second lady had some boards missing during construction, and so she wanted to get some of this timber that she needed to have it put up. She was not looking to buy any new stuff, no. She was looking to buy the timber. Well, she was looking to get the timber that she'd already bought. There were parts missing in the kit. An outdoor swing set, if like me you have grandchildren, you put it up in the backyard, and sometimes you use a crane and several workers maybe over the course of several hours to put that up. If you don't have all the boards, you can't put it up. So that was the second lady. No, they weren't confused. This is not a case of actual confusion. This is a case of post-purchase carelessness and a mere misdirected phone call. But let's look at the numbers, if we could. Two incidents out of billions of hits on Velex's infomercial. Just two. Where are the incidents coming from? Play Nation. They presented nothing in the record that anyone had called them looking for Velex. Not a single whit. So, even if you look at these as actual confusion, it's certainly minuscule, but I maintain this is not confusion. This is carelessness. So, let me move on to point number three that we've raised. And that's whether a registration should be canceled where the goods in the registration have not been enjoined. The registration here is on a pull-up bar. And the court canceled that registration, but did not enjoin the use of the mark Gorilla Gym as used on the pull-up bar, but only on children's accessories. So, it struck me, and I was dumbfounded, if you will, as to why a registration should be canceled when the goods stated in it have not been enjoined. Why isn't the safe distance rule dispositive on the cancellation of the registration? You've referenced the gym bar, if that's part of the system, and some of the accessories are found to infringe. Isn't using the mark on the system too close to violating the injunction? I don't think so. I think that when the judge makes a decision not to enjoin the pull-up bar, which is what he did, he himself negated or declined to apply that doctrine or rule. In other words, if you look at the injunction, it's very carefully, there are two sections to it, both sections. Each section is directed to children's accessories. Those two are directed to children, but the third one is not. It says, otherwise infringing upon Play Nation's Gorilla Playset's mark. It seems to me that that is pretty broad. Well, if it's that broad, then it's invalid. An injunction has to define the conduct that's enjoined. You're not making that argument. And did you ask the district court to clarify whether this injunction applies only to children's accessories? No. We read it literally, and broad language of that, well, don't infringe. As far as I'm concerned, that language is invalid. You have to say what infringes and what doesn't. I see that my time is vanishing. Were there other questions? Thank you, Mr. Warren. Thank you. And we'll hear from Mr. Hershovitz. Mr. Hershovitz. May it please the Court. My name is Mark Hershovitz, and I represent Play Nation Play Systems, the manufacturer of Gorilla Playset's brand playsets. The district court correctly found that this was a strong case of likelihood of confusion. There is a seven-factor test that is applied in this circuit. And the district court found that on six of the seven, and we would contend on seven of the seven, a strong showing had been made. Is there a difference between consumer carelessness and consumer confusion? Well, the test for trademark infringement is whether an ordinary, reasonable, and prudent consumer is likely to be confused. And so— Well, Mr. Ward makes the argument that the two consumers that the district court relied upon to determine that there was confusion, they were actually careless and not confused. They were careless in that this isn't a purchase case. They thought they were purchasing Play Nation's products, and they actually purchased Velux's products. They already had it, and they were just calling for maintenance questions. And so they were redirected. And that's carelessness and not confusion. What's your response to that? Well, first, a fair reading of the testimony shows that this is not carelessness. That this was consumer confusion. Patricia Covington reached out and contacted Gorilla Gym or Velux because she found Gorilla Gym's website on the internet, saw that there was children's swinging and playground equipment, and she reached out and contacted them. And her testimony was, she says, Gorilla this, Gorilla that. I thought they were a diversified company. That is a reasonable conclusion for that consumer to make. And Ms. Stuckey's testimony was similar when she was looking to get some missing pieces from the playground equipment that they bought. But that's very important because it goes to the standard of review. And the standard of review here is that where there are two equally plausible, and we would contend they're not equally plausible, but where there are two views of the evidence, the district court's determination does not get overturned. So this court would have to find that, based on the testimony of these two witnesses, that they were completely unbelievable. And I don't think that this court can find that. I don't think a fair review of the testimony shows that. The Play Nation had a very strong mark. They've been in business for 15-plus years using this mark. The marks are on virtually identical goods. In fact, in the record, there are two television commercials. One is, the citation to it in the record is document 122-3 of 71. And if you review the commercials, the commercials that the defendant was running, talk about bringing the fun of the outdoors inside, and indeed begins with the showing of an outdoor play set and encouraging consumers to buy it. So the mark was used on, a very similar mark, used on similar and many times identical products, because each company sold the accessories, if you will. They would sell the belt swings, the toddler swings, the trapeze bars, and the rings. And those were interchangeable, where you could take the defendant's trapeze bars and rings and swings and attach them to a Gorilla Play Set's play set. There was a similarity of the trade channels. The companies attended the same trade shows. They both heavily do internet marketing. There was the one area where the court, in the seven factors, said that at the time VELEX adopted the mark, they did not intend to infringe on Play Nation's Gorilla Play Set's mark. Now, we understand that that's the court's finding, and that's based on the fact that they did a search, and they decided to use it. They were not represented by counsel at the time. And the court was very clear that it was at the time of the initial adoption that they did not intend to infringe. But that's a— You're now getting to what worries me about your case, and that is the willfulness finding and accounting for the defendant's profits. It seems to me that in light of that finding that you just mentioned of the district court, that they were in good faith when they chose the mark, and in light of the fact that they actually got the mark in the Patent and Trade Office, which means that the lawyers there looked at the mark and thought it was not likely to confuse. And in light of—I don't see any evidence, and you've pointed to none, of a change of circumstances which would make the defendant realize that he should not go ahead and litigate this issue. Ordinarily, you've got a right to litigate the issue of whether or not you do infringe. And the court here relied in finding willfulness solely on the fact that they continued to use the mark after suit was filed. And that seems to me very likely to be an abuse of discretion. How do you respond to that? Well, I'd like to make three points. The first is the intent analysis and the likelihood of confusion analysis is not a one-for-one with regards to willfulness. And so, first, at the moment of adoption of the mark, based upon the district court's findings, the court found that there was no intent. But the court found that there was willfulness, at least beginning on April 11, 2014, when they were put on notice with the—that's the date of service that they were sent. Why are they not—why do they not have a right to litigate that issue? Well, they have a right to litigate, but they also have to understand respect and that their decisions have consequences. And the right to defend is different than the right to continue to infringe. The district court found that this was a strong case of likelihood of confusion. And so the Patent and Trademark Office issued the registration for the disclosed use of an exercise doorway gym bar. They did not have before them on the four corners of the document a disclosure of children's playground equipment or playground equipment generally because Play Nation's mark is for playground equipment generally. The district court didn't make a finding in that regard. That might well be a fact going toward whether or not there is willfulness, but the district court made no finding in that regard. I'm not sure I understand what you say—what you mean by in this regard. The district court did not say that the facts before me now are very different from the facts before the Patent and Trademark Office. No, the court did not do that, but I don't think the court needs to do that because the law is very clear that the registration cannot be a shield as to— Are not all of those cases that say the registration cannot be a shield, are not all of those cases, going to the issue of infringement, Val? No? And not to the issue of willfulness? I can't say that definitively, but I don't know of any case that drew that distinction. But there's additional information in the record, evidence in the record, that shows willfulness. And if that is true, should not the district court address that in the first instance? I mean, if we think that the district court abused its discretion, which we may or may not, but if we think that because he relied solely on the continuation of the use, we would then vacate that but send it back for the district court to consider that other evidence. I don't think this court needs to, Your Honor, because I think this evidence is already in the record, and I don't think it's necessary to dot that I and cross that T. And let me tell you is that in the record that this is not just a continuation of the use that they were doing. They leaned in. That they embarked on an advertising campaign where they purchased Google AdWords. These are triggers that when people are doing searching on the Internet to display products. And they purchased a plethora of AdWords that were guerrilla play sets. They purchased my client's trademark. They purchased things like outdoor play sets, swing sets, and a variety of keywords. And there's a long citation in the Applease brief that lists all of them with pinpoint sites into the record. And so this isn't just continuing use. This is leaning in. When VELEX registered its mark with the Patent and Trademark Office, did PlayNation have an opportunity to object? As a general proposition with constructive notice considerations, perhaps so. But in reality, PlayNation was unaware of this registration application. But it could have objected. Tell me how this works. When you seek to register a mark, isn't there some sort of notice that goes out? There is only a publication in the Federal Register when you seek to register a mark. Some corporations may engage in monitoring. And so while PlayNation is a good and substantial business, it is not Apple Computer. And so it does not engage in that type of monitoring. But that type of monitoring is not necessary. Otherwise, there would never be any cancellation proceedings. But there was a notice in the Federal Register, and PlayNation did not object. If it had objected, wouldn't that have been the registration of the mark, whether or not they were entitled to it? Wouldn't it have been litigated before the Patent and Trademark Board? If PlayNation had objected and sought to do it at the Patent and Trademark Board, it could. It could have equally decided to skip the Patent and Trademark Board and bring the action here because the use started prior to any decision on registration. But that also goes to the— Why shouldn't we consider that? Why shouldn't that be considered as a factor in determining whether or not the violation of the mark was willful? Well, willful goes to the defendant's conduct, not to the plaintiff's conduct. And so if this court, being that the district court had issued one of its findings that there was no intent at the time of adoption of the initial decision to use the mark, the court found willfulness at least starting on April 11th. But that also goes to the Jensen case. I presented the court with supplemental authority this morning, and the Jensen case is a situation of what is called expanded use. In the Jensen case, you had a registration for restaurant services and pizza. You also had a later subsequent registration for restaurant services, namely a bagel restaurant. And in the Jensen case, the bagel restaurant later decided it was going to add pizza to the menu. And in that case, that later use, that later expansion authorized the cancellation of the mark. Well, so you've suggested that certainly Velix would have a right to defend. But so what are you suggesting that they should be doing whenever a lawsuit is filed against them challenging their mark? Are they supposed to stop production? Are they supposed to stop advertising? You've mentioned lean in. What if Planation is sued and its mark is challenged? Does that become willful then if they lose the lawsuit? It depends on the strength of the case, Your Honor. Certain things can be considered a gray. You know, we are all trained in law school to see gray. But sometimes there is black and white. And as the district court expressly stated in its order, this is a strong case of likelihood of confusion. Doesn't the grayness come in because they have the mark too? They went through and got the registration? Well, they got the registration, but the registration was for specious disclosure. The registration was not, was for something called exercise collation. Is that not the kind of fact that the district court needs to consider about whether or not it was willful? And we don't have those facts here. Is that not true? These facts are in the record, Your Honor. The fact in the record is that when they started this company, it was started for the express purpose of selling children's swing sets. That was not what was disclosed on the trademark application. And that testimony is in the record. And documentary evidence to that effect is in the record. Let me ask you this. The other side says that this was just a suit out of the blue. There was no cease and desist letter from the plaintiff and then that they tried to contact the plaintiff after suit was filed and got no response. Is all of that true? Partially true, Your Honor. There was no cease and desist letter. Does that not also go to willfulness? No, Your Honor. So part of that is true. There was no cease and desist letter, but there was communication between the plaintiff and the defendant after the service of the case. There was no one-on-one communication with the president of the two companies, but there was substantial communication between the parties. And it does not go to willfulness because, as I've conceded, if you're going to say that at the time of adoption they were innocent, they were served with the suit and they leaned in. They had a decision to make. Thank you very much, Your Honor. Let me ask you another question before we got your supplemental authority, your opinions in the Jansen case and the Sterling case this morning, and we have not had an opportunity to read them yet. And one's a 1994 case and one's a 2007 case. Why weren't these precedents cited in the briefs? They were not opinions that were rendered after the briefs were filed. It's not helpful to the court when we get them on the morning of oral argument. I understand, Your Honor, and this is – there's a wide variety of books in the library and it just was – these cases just did not come up in our Westlaw searching and our other searching. We thought they were particularly relevant. And so under the rules – and I didn't mention the Sterling case, but under the rules is if you might mention it, we were required to bring it. Thank you, Your Honor. Thank you. First of its, we'll hear again from Mr. Ward. Thank you, Your Honor. A strong case. A strong case. What does that mean? That's not a finding of fact. All that is is a statement of confidence that the district court was confident in what he wrote. It has no objective meaning. And we contend that it was not a strong case at all because it was founded upon the errors of law and abuse of discretion. Your Honor is absolutely right that every mark, every issued mark is published for opposition. Those of us who do patent, trademark, and copyright work for a living and focus on that have done probably hundreds of trademark oppositions. Here there was no cease and desist. Instead, the plaintiff decided to spend what I estimate to be a million dollars litigating this case rather than discussing it with the much smaller opponent. Those facts, I think, are pertinent in looking at the respective conduct of the parties here. Counsel makes the unaccountable statement that the goods here are virtually identical. They're not. An outdoor swing set that has multiple stations weighing 3,000 pounds and costing thousands of dollars has really very little in common with an indoor pull-up bar to which accessories can be attached for a single station under supervision of the family inside the house, costing maybe $200. There's very little overlap in the goods. Counsel argues that they can be used together or you could take them apart, dissect them, and hang them from each other. But there's no evidence in the record that anyone has ever done that. Now as to these ladies, I don't mean to be impolite, but I must be candid with the court. One lady testified that when she went to the website, and of course there are websites everywhere, and they're treated very casually by most people in our experience. The one lady went to Velix's website and her testimony was she saw the swing set that she had purchased on Velix's website. And I challenge anyone to look, and Velix's website is in the record, I challenge anyone to look at that Velix's website and find Play Nation's swing set. No, this lady was not only careless, but forgetful. Thank you. Mr. Ward, the court is going to give you seven days after today's date within which to file a letter, no more than three pages, responding to the supplemental authority. Thank you. Appreciate it, Your Honor. Thank you, Counsel.